```
UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
- - - - - - - - - - - - - - - - - -x
In re:                              :

PAWTUXET VALLEY PRESCRIPTION &      :   BK No. 07-11767
SURGICAL CENTER, INC.                       Chapter 11
          Debtor
- - - - - - - - - - - - - - - - - -x
```

## ORDER ALLOWING USE OF CASH COLLATERAL

Heard over the course of several days on the Debtor's motion to use cash collateral, to which the secured creditor, Bank Rhode Island ("BankRI"), strenuously objects. The case law and statutory guidance for the issue before the Court is clear and well established. Section 363(c)(2) provides that: "The Trustee may not use sell or lease cash collateral ... unless (A) each entity that has an interest in such collateral consents; or (B) the court, after notice and hearing, authorizes such use ... in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). The section also provides that at the request of the secured creditor the Court "shall prohibit or condition such use [of cash collateral] ... as is necessary to provide adequate protection" of the secured creditor's interest. 11 U.S.C. § 363(e).

Here the parties stipulate that the BankRI's claim is $2.5 million (in round numbers). BankRI contends that its collateral is worth far less than what it is owed, that it is not adequately protected, and that the Debtor's use of the cash collateral should be stopped immediately.

BK No. 07-11767

From the moment this case was filed, BankRI has argued: (1) that the Debtor's real estate has *a liquidation value of $1.5 million*, that the secured accounts receivable are being depleted rapidly, and that because of the Debtor's peculiar accounting and record keeping practices, it is not possible to ascertain the value of the accounts receivable.

The battle lines are drawn where BankRI has placed them, with all of the attention directed at the value of the accounts receivable, and an inordinate amount of time having been invested in addressing an issue which is not dispositive of the question: Is BankRI's $2.5M claim adequately protected while the Debtor attempts to reorganize?  So, while the Court has been slow to intercede, I will finally direct the attention and focus where it belongs.

To begin with, the parties have stipulated that based on an appraisal in BankRI's possession, the fair market value of the real estate is $2.2M.  In addition, the Debtor has introduced uncontroverted evidence from two appraisers regarding the personal property, inventory, and machinery and equipment.  Manuel Ponte testified that at liquidation these items are worth between $500,000 and $600,000, and have an "in-place" value of $1.0M to $1.2M.  The Debtor's second valuation expert, Samuel Shapiro, appraised three groups of equipment – a Dose Encapsulating Machine, 2 Auto-Med pill packing machines, and 63 infusion pumps, and valued them for

BK No. 07-11767

liquidation purposes at $253,700. Shapiro also valued two natural gas generators at the premises leased by the Debtors. For purposes of this decision, I have not considered those items and assume for the time being that their value is included within the stipulated value of the real estate.

Without deciding the issue on the merits, but for the purpose of this proceeding, I will treat the value of the accounts receivable as zero.

Probably in anticipation that the foregoing numbers do not support its position, BankRI contends and assumes, incorrectly in my view, that in determining whether BankRI is adequately protected, the real estate should be valued at liquidation value, or $1.5M. The Court will not buy into that arbitrary mathematical exercise.

In determining adequate protection, the First Circuit Court of Appeals has stated that it is

> entirely logical for the judge to consider the value of the collateral relative to the amount of the debt owed... [the bank]. Indeed, we think it would be odd not to determine collateral value in an adequate protection hearing. A sufficient equity cushion is itself a recognized form of adequate protection, thus collateral valuation is a logical step in making an adequate protection determination.

*Baybank-Middlesex v. Ralar Distributors, Inc.*, 69 F.3d 1200, 1203 (1st Cir. 1995). In estimating the value of the collateral, it is appropriate to look to many models, ranging from fair market value

3

BK No. 07-11767

to forced sale or liquidation value.  In addressing valuation issues in a Chapter 11 context, it is important to consider the purpose for which the property is being used, and if the debtor intends to retain the property, it should be valued at fair market value, and not liquidation value.  *See In re Old Winthrop Farms Nurseries, Inc.*, 50 F.3d 72, 74-76 (1st Cir. 1995).  While the Court in the *Old Winthrop Farms* case was concerned with Section 506(b), it looked to the valuation standard used for adequate protection purposes in arriving at its conclusions.  *See id*.

Applying the *Old Winthrop* valuation standard, I find that BankRI is adequately protected, over secured, and that there exists a sufficient equity cushion.  I reach this conclusion as follows:

(1) BankRI holds a first secured position on real estate with a stipulated fair market value of $2.2M; and

(2) BankRI holds a first secured position on all of the Debtor's inventory, machinery, and equipment.  Based on the undisputed evidence, I find, *conservatively,* that the *forced liquidation* value of the Dose Encapsulating Machine, the two Auto-Med Packing Machines, and the sixty-three assorted Infusion Pumps is $253,700.  *See* Debtor's Exhibit 5, Report of United Appraisal Service.  Additionally, Manuel Ponte testified that the liquidation value of the Debtor's vehicles and inventory is $125,000.  I find that these figures, which total $2,578,700, are reasonable.

BK No. 07-11767

Based on these assets alone, BankRI is comfortably protected at this time, and it holds yet additional collateral. Neither have I considered any possible going concern value, leasehold improvements, or good will. In addition, in June 2007, the Bank valued its own collateral position to be $3,120,000, plus a personal guarantee from the Debtor's principal, who has personal assets worth $1,273,000 (according to the Bank). *See* Debtor's Exhibit 4.

For the foregoing reasons, the Debtor's motion to use BankRI's cash collateral is GRANTED for a period of 60 days. As a condition to using cash collateral, the Debtor shall continue to supply the Bank with daily operating reports. If it is not already doing so, the Debtor shall supply the Bank with financial information at the close of each business day showing: (1) its gross sales for the day in all divisions; (2) its total cash receipts for all divisions; and (3) its total expenditures for all divisions. A status hearing on this matter will be held on November 7, 2007, at 10:00 a.m.

Dated at Providence, Rhode Island, this 5th day of October, 2007.

/s/ Arthur N. Votolato
Arthur N. Votolato
U.S. Bankruptcy Judge

Entered on docket: 10/5/2007

5